FILED
2008 MAY 13 PM 4:10
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____

1 | MICHAEL L. MALLOW (SBN 188745)
mmallow@loeb.com
2 | PATRICK DOWNES (SBN 186461)
pdownes@loeb.com
3 | LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
4 | Los Angeles, California 90067-4120
Telephone: 310-282-2000
5 | Facsimile: 310-282-2200

6 | Attorneys for Plaintiff
EDebitPay, L.L.C.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEBITPAY, L.L.C., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>TELEDRAFT, INC., a Delaware corporation,<br><br>Defendant. | Case No. **CV08-03153 (CTx)** R<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br>3. **CONVERSION**<br><br>**(DEMAND FOR JURY TRIAL)** |

LA1764006.2
212006-10005

1

COMPLAINT

1. This is an action primarily to recover plaintiff EDebitPay, L.L.C.'S money that is being wrongfully held by defendant Teledraft, Inc.

## THE PARTIES

2. Plaintiff EDebitPay, LLC ("EDebit") is a Nevada limited liability corporation with its principal place of business in Sherman Oaks, California.

3. Defendant Teledraft, Inc., is a Delaware corporation with its principal place of business in Tempe, Arizona.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is appropriate in the Central District of California pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted in this action occurred in the Central District of California and EDebit's principal place of business is located in this District.

## FACTUAL BACKGROUND

6. EDebit is a provider of stored value debit cards, including branded or customized debit card programs, payroll card services, ATM cards, gift cards and other one-time use cards.

7. Teledraft is an electronic payment processing company that provides Automated Clearing House ("ACH") processing for businesses. Teledraft touts itself as a leader in processing check and electronic funds payments for merchants in specialized, high risk businesses.

8. On or about May 26, 2005, EDebit and Teledraft entered into a form Merchant Services Agreement, drafted by Teledraft. A true and correct copy of this agreement is attached as Exhibit "A" to this complaint. Under the Merchant Services Agreement, Teledraft agreed to process electronic ACH withdrawals from consumer accounts who purchase EDebit's stored value debit cards.

9.  The fees and rates to be deducted by Teledraft from revenue generated by the sale of EDebit debit cards were set forth on Schedule "A" to the Merchant Services Agreement.

10. Schedule "A" to the Merchant Services Agreement also states that Teledraft shall create a "5% six month rolling reserve on the gross funds accepted into the system . . . . [and] [t]he payout schedule for this account will be 12 business days . . . ."

11. After Teledraft and EDebit signed the Merchant Services Agreement, Teledraft provided EDebit with access to Teledraft's website, which permitted EDebit to view, *inter alia*, the total number of transactions and dollar amount that Teledraft was processing for EDebit. Teledraft's website also permitted EDebit to view the return rate of purchases made on EDebit issued debit cards, and to calculate the five percent reserve Teledraft maintained on the agreed upon six-month rolling basis.

12. On March 2, 2006, Teledraft notified EDebit "that a decision has been made to suspend EDebit Pay from future processing with TeleDraft . . . . The 2,033 transactions sent through today will not be processed. We did give you access to view status on your accounts but our system will no longer accept new transactions from EDebit Pay."

13. On or about March 2, 2006, Teledraft was in possession of approximately $813,554.55 owed to EDebit for transactions that Teledraft had previously processed for EDebit prior to Teledraft's decision to terminate the Merchant Services Agreement.

14. On or about March 2, 2006, EDebit's "six month rolling" reserve held by Teledraft was approximately $360,288.11.

15. After March 2, 2006, Teledraft refused to provide EDebit with reports that would have permitted EDebit to ascertain (1) the exact number of transactions

that were charged back or reversed, and (2) the exact amount of funds held by Teledraft but owed to EDebit, including the reserve amount.

16. Over the past two years, EDebit has made repeated demands for the amounts held by Teledraft and owed to EDebit, and documentation from Teledraft confirming the amounts. Teledraft has refused to release EDebit's money and has not provided any documentation or reports regarding the funds being held by Teledraft.

## COUNT I

### (Breach of Contract)

17. EDebit incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 16, inclusive.

18. The May 26, 2005, Merchant Services Agreement obligated Teledraft to remit funds to EDebit from the consumers' purchase of the EDebit debit cards. As specified in Schedule "A", the "payout schedule for this account will be 12 business days . . . ."

19. Teledraft has failed to release EDebit's money for nearly two years, in breach of the Merchant Services Agreement.

20. The amount of EDebit's money being held by Teledraft under the payout schedule is approximately $813,554.55.

21. The May 26, 2005, Merchant Services Agreement entitled Teledraft to maintain a reserve, but only on five percent of the gross funds accepted into the Teledraft system, and on a six month rolling basis.

22. Teledraft has not accepted any funds on behalf of EDebit for over two years. The reserve, as computed on a six month rolling basis, should therefore be zero. Accordingly, any reserve amount held by Teledraft must be released to EDebit.

23. The reserve amount owed to EDebit is approximately $360,288.11.

24. As a direct and proximate result of Teledraft's breach of the Merchant Services Agreement, EDebit has suffered injury and damage in an amount to be proved at trial, but no less then the amount of money that Teledraft refuses to release to EDebit.

## COUNT II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

25. EDebit incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 24, inclusive.

26. At all relevant times herein, there existed between EDebit and Teledraft a covenant of good faith and fair dealing implied in fact and in law where Teledraft agreed to act in good faith and deal fairly with EDebit.

27. Teledraft breached the covenant of good faith and fair dealing implied in the Merchant Services Agreement in the following, among other, particulars:

   a. By providing EDebit with continual excuses regarding Teledraft's refusal to pay amounts owed to EDebit; and

   b. By failing to deliver or provide EDebit with any reports or information regarding amounts held by Teledraft and owed to EDebit after March 2, 2006.

28. In acting and failing to act as alleged herein, Teledraft has breached, and continues to breach such implied covenant of good faith and fair dealing, and as a direct and proximate result of which EDebit has incurred damages in an amount presently unascertained. Plaintiff will seek leave of Court to amend the Complaint to state the exact amount of said damages when the same have been ascertained or on proof thereof.

## COUNT III

### (Conversion)

29. EDebit incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 28, inclusive.

30. Pursuant to the Merchant Services Agreement, Teledraft was entitled to hold EDebit money for a limited period of time.

31. Currently, Teledraft wrongfully holds approximately $813,554.55 and $360,288.11 that belongs to EDebit.

32. As the rightful owner of such sums, EDebit has demanded that Teledraft release to EDebit the money Teledraft currently and wrongfully holds and to provide an accounting of such sums.

33. Teledraft has refused to release and deliver EDebit money, and, on information and belief, has converted such funds to Teledraft's own use.

34. As a direct and proximate result of the wrongful acts of Teledraft, EDebit has been damaged in an amount presently unascertained, but no less then the amount of money Teledraft refuses to release to EDebit. EDebit will seek leave of the Court to amend the Complaint to state the exact amount of said damages when the same have been ascertained or on proof thereof.

35. The foregoing wrongful acts and omissions of Teledraft were committed fraudulently, oppressively, maliciously, despicably, and with the intent to injure EDebit, as a result of which, EDebit is entitled to recover from Teledraft, in addition to the damages according to proof, punitive damages by way of example and to punish Defendants.

WHEREFORE, EDebit prays for judgment as follows:

1. For judgment in favor of EDebit and against Teledraft;

2. For actual damages according to proof, but in an amount no less then the amount of EDebit money Teledraft is currently and wrongfully holding;

3. For punitive damages according to proof;

4. For pre-judgment interest;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court deems just and proper.

Dated: May 13, 2008

LOEB & LOEB LLP
MICHAEL L. MALLOW
PATRICK DOWNES

By: /s/ Michael L. Mallow
Michael L. Mallow
Attorneys for Defendant
EDEBITPAY, L.L.C.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

By: /s/ Michael L. Mallow
Michael L. Mallow
Attorneys for Defendant
EDEBITPAY, L.L.C.

**EXHIBIT A**

# Teledraft, Inc.
## Merchant Services Agreement

This Merchant Services Agreement (this "*Agreement*") is entered into as of the date it is signed by an authorized representative of Teledraft, Inc. (the "*Effective Date*"), by and between Teledraft, Inc., a Delaware Corporation ("*Teledraft*"), and __EDebitPay, LLC__ a __Nevada__ corporation ("*Merchant*"), with regard to Merchant's use of the Teledraft Payment Services or the Merchant Web Site, as defined herein.

1. **Definitions**

"*Business Day*" means Monday through Friday except National and Banking holidays.

"*Credit Slip*" means evidence of a refund or price adjustment to a previous TPS Sale to be credited to a customer and transmitted to either Teledraft or the Merchant by the other party in the form and within the time period specified by Teledraft.

"*Goods*" means goods and/or services available for purchase by Merchant.

"*Integrated Product*" means a Merchant offering (such as on a Merchant Web Site) that has been integrated with the Software and any derivative works, for the sole and limited purpose of incorporating the TPS as an available feature of the Merchant offering.

"*Launch Date*" means the date that the Integrated Product is launched on the Merchant Web Site and/or Teledraft Web Site.

"*Merchant Administrator*" is the person or persons designated by Merchant who will have access to, and full rights to change Merchant account information. The Merchant Administrator may change from time to time upon prior written notice to Teledraft.

"*Merchant Web Site*" means any World Wide Web page(s) or site(s) (whether located on Merchant's or a third party's servers) operated or maintained by or on behalf of Merchant from which Merchant may facilitate customer's purchase Goods through the TPS.

"*Teledraft Interfaces*" or "*Software*" means the protocols, software components and other interfaces and software that permit data transfers between Teledraft and Merchant for the purpose of fulfilling the product, technical and functional specifications of the Integrated Product.

"*Teledraft Payment Service*" or "*TPS*" means the Internet-based payment system developed and licensed by Teledraft that Merchant shall utilize to enable Merchant to facilitate payment from customers for Goods from an existing checking account (or other ACH-enabled account), and includes any Web site, computer hardware, equipment and software operated by Teledraft and/or its agents and designees, whether located on Teledraft's or a third party's premises.

"*TPS Sale*" means any sale of Goods that Merchant makes to a customer through the TPS on the Integrated Product. TPS Sales shall be denominated in U.S. dollars.

"*TPS Transaction*" means any TPS Sale, Credit Slip or Chargeback (as defined herein.)

2. **Merchant Account and Underwriting Procedures**

Merchant has or will establish a commercial checking account with a depository approved by Teledraft in its sole discretion, and will maintain such account for settlement and billing purposes associated with the processing of payments under this Agreement (the "*Merchant Account*"). Merchant will maintain a minimum balance of funds (in an amount that may change from time to time and as determined by Teledraft, in its sole discretion), in the Merchant Account for the purpose of covering reversals, Chargebacks, and other fees. Merchant shall reimburse Teledraft for any costs or expenses incurred as a result of insufficient balances in the Merchant Account. Merchant acknowledges that the actions of the Merchant Administrator will be deemed actions by Merchant hereunder, and Merchant accepts full responsibility and liability for such acts and/or omissions of said Merchant Administrator. Teledraft reserves the right to put Merchant transaction settlement limits in place if it determines (in Teledraft's sole discretion) such limits are necessary.

Merchant understands that a consumer report of each of the officers, directors, partners, proprietors, and/or owners of the Merchant may be requested from a Consumer Reporting Agency. A Consumer Report is a routine report on credit worthiness, frequently used by creditors. If Merchant is approved for any payment processing service, subsequent Consumer Reports may be required or used in connection with the maintenance, updating, renewal or extension of such services. Merchant agrees that all business reference, including banks, may release any and all credit and financial information to Teledraft. Merchant acknowledges and agrees that the information provided pursuant to this Merchant Agreement and other relevant credit data, is being supplied to Teledraft and may be used as set forth herein. If Merchant's application for business credit is denied, Merchant has the right to a written statement of the specific reason for the denial. To obtain the statement, Merchant shall contact the credit initiation department at Teledraft, 7406 W. Detroit Street, Chandler, AZ 85226, 480 755-7750 within sixty (60) days from the date of notification of Teledraft's decision. Teledraft will send a written statement of reason for the denial within thirty (30) days of receiving a request.

3. **Fees and Payments**

Teledraft shall charge to Merchant and Merchant agrees to pay to Teledraft the fees and rates set forth on Schedule A, entitled "Rate Schedule." Merchant acknowledges and agrees that Teledraft cannot establish the fees and rates on Schedule "A" until Teledraft has had the opportunity to underwrite Merchant's application. If Teledraft approves Merchant's application, Teledraft will establish the fees and rates, countersign the Agreement and forward the Agreement to Merchant.

Teledraft will deduct all fees from the amounts collected for each TPS Sale prior to settlement of funds to Merchant or, alternatively, Teledraft may, at its option, invoice Merchant for said fees as provided herein. Teledraft will deduct the face amount of any Credit Slip or Chargeback from amounts payable to Merchant hereunder, or from the Merchant Account, at Teledraft's option; or, upon Teledraft's demand, Merchant will immediately make payment to Teledraft in the face amount of any such Credit Slip or Chargeback. Teledraft shall deduct any fees set forth on the Rate Schedule attached hereto, whether or not Teledraft accepts said TPS Sale for settlement. A charge of 1½% per month or the highest amount permitted by law, whichever is lower, shall be added to the outstanding balance of any account that is thirty (30) days or more delinquent. Teledraft reserves the right to suspend its service and obligations to Merchant during any period in which Merchant's account is delinquent. Teledraft may suspend or hold any funds to be paid to Merchant for any period of time if deemed necessary by Teledraft in its sole discretion, and Teledraft may offset any indebtedness of Merchant to Teledraft against any such funds. It is acknowledged that any payment to Merchant hereunder is provisional and may be revoked by a Chargeback under this Agreement for any other reason deemed necessary by Teledraft.

Merchant is solely responsible and liable for any and all applicable federal, state and/or local sales, use, excise or similar taxes in connection with the sale or distribution of Goods to customers through the TPS and

Initial [signature]

7

any services provided by Teledraft hereunder (other than taxes on Teledraft's income).

4. Settlement

For TPS Sales accepted by Teledraft, Teledraft will, on behalf of Merchant, initiate ACH entries to Merchant's Account from customer's accounts as authorized by each customer and as directed by Merchant by and through its Merchant Administrator. For any amounts due under this Agreement, Merchant authorizes Teledraft or Teledraft's designee to initiate credit entries, debit entries and adjustments to the Merchant Account by ACH or other funds transfer, and authorizes Teledraft or Teledraft designee to credit or deposit funds to the Merchant Account in accordance with such credit entries and to debit, withdraw and transfer funds from the Merchant Account to Teledraft or Teledraft's designee in accordance with such debit entries and adjustments. This authority shall remain in effect pursuant to the pay-out schedule in Schedule "A" and cannot be terminated by Merchant by its submission to Teledraft of written notice of Merchant's cancellation or termination of such authorization. Teledraft shall not be liable to Merchant for any delays in receipt or transmittal of funds or errors in credit or debit entries caused by third parties, including without limitation the ACH, any depository, or any agent of Merchant.

Merchant agrees to provide Teledraft with the information it requests regarding each of Merchant's TPS Sales to its customers. In the event the information that Merchant provides to Teledraft is incomplete and/or incorrect, Teledraft may, in its sole discretion, request additional information from Merchant regarding the TPS Sale; however at no time is Teledraft under any obligation to seek such additional information and shall not be liable for failing to make such inquiries. Any and all information solicited, received, or otherwise collected from Merchants' customers by Merchant and forwarded to Teledraft, its agents and/or designees under this Agreement is and shall remain the sole property of Teledraft.

5. Chargebacks

In its sole discretion, Teledraft may immediately charge back to Merchant the face amount of any TPS Sale (a "*Chargeback*"). Teledraft shall have the right at any time to charge Merchant for such amounts or to deduct such amounts from any funds payable to Merchant, or any account of Merchant (including, without limitation, the Merchant Account), without notice in any situation relating to such TPS Sale, including, but not limited to, circumstances where (i) Goods are not delivered or are alleged not to have been delivered to the customer or the recipient designated by the customer; (ii) Goods are returned to Merchant; (iii) Merchant has engaged in, or Teledraft reasonably believes that Merchant has engaged in, an any type of dishonesty, fraud or misrepresentation, whether or not a Credit Slip is delivered to Teledraft by Merchant; (iv) any TPS Sale is returned unpaid to Teledraft by the customer's financial institution for insufficient funds, invalid account status, or for any other reason; (v) any TPS Sale is alleged to have been authorized improperly, or the customer's account is alleged to have been used without the specific authority of such customer, or an authorized user thereof; (vi) a Merchant's customer disputes participating in the transaction, disputes any aspect of the transaction including the sale, quality, or delivery of the Goods, or disputes the performance or quality of services covered by any such TPS Sale and accepted or not accepted by such customer; or (viii) such TPS Sale fails to comply with the terms and conditions of this Agreement or fails to comply with the requirements, rules and regulations of the FTC or NACHA. In the event Teledraft receives an excessive number of complaints and/or requests for reversal of transactions by Merchant's customers and/or Chargebacks or other reversals of previous payments to Merchant for TPS Sales (the excessiveness of which shall be determined by Teledraft in its sole discretion), Teledraft may suspend or terminate the TPS to Merchant immediately without prior written notice and may, in its sole discretion, retain any and all money it holds on Merchant's account and may debit any of Merchant's Accounts to cover any contemplated shortfall.

6. Billing Inquiries and Customer Disputes

Merchant and Teledraft recognize that customers may direct to Merchant or Teledraft inquiries and/or complaints concerning purchases, unauthorized purchases, deliveries, returns, adjustments, charges, credits, payments, alleged fraud and other matters, some or all of which cannot be properly answered without the full and prompt cooperation of the other party. Each party agrees to cooperate and to maintain in its own operations high standards of quality and courtesy and full compliance with law and good business practice. Merchant will provide Teledraft a copy of its refund and cancellation policies prior to the Effective Date. Merchant shall not change its refund or cancellation policies without Teledraft's prior written approval.

With respect to any disputes or inquiries concerning the quality of merchandise or service forward to Merchant by Teledraft, Merchant shall reply in a timely manner to such disputes or inquiries directly to the customer with a copy to Teledraft within a reasonable period after the date on which Teledraft sends the dispute to the Merchant. If Merchant fails to comply with the Teledraft disputed transaction policies in effect from time to time and that are incorporated herein by reference (a copy of which has been previously provided to Merchant), Merchant will be subject to a Chargeback.

If Merchant and a customer agree in response to a dispute or inquiry, to accept a return of Goods, or to make an adjustment to the price of Goods or to issue a refund of the price of Goods purchased pursuant to an TPS Sale, Merchant will prepare and transmit a Credit Slip to Teledraft.

Merchant agrees to cooperate in good faith in any inquiry into any allegations concerning any TPS transactions or other Merchant activities. Merchant further agrees that Teledraft may take any actions it deems necessary, in its sole discretion, to insure that Merchant and its employees, agents and/or designees are complying with this Agreement and all laws, rules and regulations governing TPS Sales. Such actions include, but are not limited to, listening to recordings of verifications of transactions, listening as sales calls are being made by Merchant, and/or requiring that Merchant records sales calls or portions of sales calls and forwarding them to Teledraft immediately.

7. Representations and Warranties

Merchant represents and warrants that all Goods sold or distributed to customer through the TPS or through the Merchant Web Site shall conform to Merchant's own representations and warranties regarding such Goods.

Merchant represents and warrants that it shall not violate any federal, state or local governmental laws, rules and/or regulations related to selling or offering the Goods, including any laws, rules and/or regulations regarding selling over the telephone.

Merchant represents and warrants to Teledraft that each telephone sale is a legitimate transaction in compliance with all applicable laws and regulations.

Merchant represents and warrants that it or any of its officers, directors, partners, proprietors, owners or principals have not been or are currently not under investigation by any governmental agency. In the event that Merchant becomes aware that it is under investigation, either through direct or indirect means, it will immediately inform Teledraft in writing of the nature of such information.

Merchant represents and warrants that all statements made by Merchant to Teledraft, including without limitation statements contained in applications, are true and correct. Merchant will immediately notify Teledraft of any changes to any fact previously stated to Teledraft.

8. Laws, Rules and Regulations (Adherence to Laws)

Teledraft and Merchant will comply with all existing and future rules and regulations (which are incorporated herein by reference) issued by Teledraft for processing of TPS Transactions. Teledraft and Merchant will comply with all applicable state and federal laws, rules and regulations affecting the use of checks, drafts and ACH transactions,

8

including without limitation, rules and procedural guidelines established by the Federal Trade Commission (FTC) and the National Automated Clearing House Association (NACHA). Notwithstanding the foregoing, Merchant agrees to terminate any preauthorized and/or recurring payment in the event a customer notifies Merchant of such customer's recession of such authorization at least three (3) Business Days prior to the scheduled transfer. Merchant will comply with any and all operating instructions and any amendments thereto that may be provided by Teledraft during the term of this Agreement. Merchant acknowledges and agrees that Teledraft is under no obligation to initiate or carry out any transaction where to do so could violate any local, state, national, or international law or regulation. Without the prior written consent of Teledraft, Merchant will not allow customers to engage in gambling through the TPS on or through the Merchant Web Site, nor will Merchant add a surcharge or other extra fee of any kind to the sales amount when a customer is paying via the TPS. Merchant will not establish any minimum sales amount below which Merchant will not accept payment via the TPS.

Merchant acknowledges and agrees that even if its business is domiciled in a country outside of the United States, that it will adhere to U.S. laws, rules and regulations and be subject to its jurisdiction.

9.  Assistance in Litigation and Response to Court Orders and Subpoenas

If any Merchant's act or omission causes Teledraft to respond to a court order, subpoena or otherwise in litigation, Merchant shall, in addition to its duty to indemnify as set forth in Section 14 above, furnish any such information and assistance to Teledraft as it may require. In the event that Merchant's conduct in any way results in a court order, subpoena or any other process that requires Teledraft to respond, Merchant shall be invoice and shall pay for all costs and fees related to such response. These fees include, but are not limited to, attorney's fees, accounting fees, hourly costs of Teledraft employees involved, any travel fees, postage and/or courier fees and any other cost or fee incurred. Teledraft shall forward an invoice to Merchant and shall deduct such costs and fees from any Merchant Account. If there are insufficient funds to cover such costs and fees, Teledraft shall be entitled, at Teledraft's sole option, to deduct such fees from any other Merchant account, to offset from any pending or future transactions or to invoice Merchant.

10. Term and Termination

*Term.* This Agreement shall have an initial term of three (3) years and, unless thirty (30) days prior written notice is provided by either party, shall be automatically extended for successive one-year periods on the same terms and conditions expressed herein, or as amended by the parties in writing. Teledraft shall be entitled to terminate this Agreement at any time with or without cause upon thirty (30) days prior written notice. In the event of a breach of this Agreement or suspected wrongful conduct by Merchant, Teledraft may terminate this Agreement immediately without prior notice. If Merchant cancels this Agreement for convenience before its natural term, Teledraft shall have the right to retain all deposits in Merchant's Account and any reserves then held by Teledraft.

*Termination; Survival.* Without limiting Teledraft's right to suspend or terminate this Agreement as set forth herein, if either party defaults in the performance of any of its obligations hereunder, and if any such default is not corrected within thirty (30) days after it receives notice in writing, the non-defaulting party may terminate this Agreement upon ten (10) days prior written notice. However, this Agreement may immediately be terminated by Teledraft (i) upon the institution by Merchant of insolvency, receivership or bankruptcy proceedings or any other proceeding for the settlement of its debts that are not dismissed or otherwise resolved in its favor within sixty (60) days thereafter; (ii) upon Merchant's making a general assignment for the benefit of creditors; or (iii) upon Merchant's dissolution or ceasing to conduct business in the ordinary course. Teledraft may terminate this Agreement at any time without notice if Merchant has become inactive, engaged in, or Teledraft reasonably believes that Merchant has engaged in, any type of dishonesty, fraud or misrepresentation in connection with making or processing of TPS Sales and/or transactions. In the event of termination or cancellation of this Agreement, sections that by their nature should survive, shall survive and shall continue to apply in accordance with their terms. The termination of this Agreement shall not affect the rights and obligations of the parties with respect to transactions and occurrences that took place prior to the date of termination, except as otherwise provided herein.

11. Intellectual Property

*Confidentiality of Proprietary Information.* Each party agrees that the terms and conditions of this Agreement will be treated as confidential information. Merchant further understands that certain information vital to the success of Teledraft is considered highly confidential and proprietary in nature, and is not to be shared, disseminated, disclosed, divulged, sold or otherwise made available to any person, firm, corporation or entity either during or after this Agreement. Proprietary, confidential information and trade secrets include, but are not limited to, client lists, client information of any kind, price lists, training manuals, lead lists, memorandums, written documentation related to office policies or procedures, information relating in any fashion to any other Teledraft client, methods, processes, compositions, pricing data, sources of supply, financial data, and marketing, production or merchandising systems or places (collectively "Confidential Information"). Merchant understands the sensitive nature of this Confidential Information and expressly agrees that for each breach or threat of breach of his or her promise to keep such Confidential Information confidential, Teledraft shall be entitled to an injunction, without need to post bond, restraining Merchant from disclosing Confidential Information, or from rendering any service to any person or entity to whom said Confidential Information has been or is threatened to be disclosed. The right to secure an injunction is not exclusive and Teledraft shall be entitled to pursue any other remedies it has against Merchant for a breach or threatened breach of this provision, including but not limited to the recovery of damages from Merchant for lost business and lost opportunity.

*Licenses.* Subject to the terms and conditions herein, Teledraft hereby grants, and Merchant hereby accepts, a non-exclusive, non-transferable license, without right to sublicense, to use the software for the sole and limited purpose of creating and operating the Integrated Product as set forth herein (hereinafter "Software"). Teledraft retains the right to materially redesign, modify, update or upgrade the organization, navigation, structure, branding, features, functionality and look and feel of the TPS at any time without prior notice.

*Ownership in Modifications and Derivative Works.* Teledraft shall own all right, title, and interest in any modifications, derivatives, improvements, enhancements or extensions of or to the Software, including any related intellectual property rights throughout the world, regardless of which party creates such derivative work. Merchant hereby irrevocably transfers, conveys and assigns to Teledraft in perpetuity all right, title, and interest in such derivative works of the Software, including without limitation, all copyrights, including the right to make derivative works and collective works with respect thereto; it being understood, however, that Merchant has, and transfers, no rights with respect to the Merchant Goods (exclusive of the Software and derivative works of the Software). Teledraft will have the exclusive right to apply for or register copyrights and such other proprietary protections as it wishes with respect to the derivative works of the Software. Merchant agrees to execute such documents, render such assistance, and take such other action as Teledraft may reasonably request, at Teledraft's expense, to apply for, register, perfect, confirm, and protect Teledraft's rights in the derivative works of the Software, including (without limitation) an assignment of copyright and/or release of any other intellectual property rights associated with the Software or Integrated Product. Without limiting the foregoing, Teledraft will have the exclusive right to commercialize, prepare and sell products based upon, sublicense, prepare derivative works from, or otherwise use or exploit the derivative works of the Software. Merchant hereby waives any and all moral rights, including any right to identification of authorship or limitation on subsequent modification that Merchant (or its employees, agents or consultants) has or may have in any derivative

Teledraft MSA rev 02/24/2004                    3

Initial

9

works of the Software. Merchant will not remove, modify, or obscure any copyright or other proprietary notices on the Teledraft materials.

*Trademarks.* Merchant may only use Teledraft's trademarks, trade names, services marks and/or logos (collectively, "Trademarks") with Teledraft's prior written approval for each specific use of its Trademark. Nothing herein will grant to Merchant any right, title or interest in Trademarks of Teledraft, or any good will arising from use of the Teledraft Trademarks. Merchant agrees not to challenge the validity of or attempts to register any Trademark of the other party, nor will it adopt any derivative or confusingly similar trademarks, brands or marks or create any combination marks with any Teledraft Trademark. If given written approval, Merchant will use the Trademarks only in accordance with Teledraft's trademark usage policies as such may be in effect from time to time and only in accordance with the provision of the terms of this Agreement. If at any time Teledraft believes that the use of its Trademarks by Merchant fails to otherwise comply with the trademark usage guidelines, such party shall so notify the other party in writing. Upon receipt of such notification, Merchant shall immediately initiate steps to conform to the trademark usage guidelines and shall affect such conformance or cure within fifteen (15) days.

## 12. No Warranty

Merchant acknowledges and agrees that Teledraft has no control over the conditions under which Merchant uses the payment processing system, and does not and cannot warrant the results obtained by such use. TELEDRAFT DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, RELATING TO THE PROCESSING AND/OR TELEDRAFT'S SERVICES, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES AGAINST INFRINGEMENT OF THIRD-PARTY RIGHTS OR THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. TELEDRAFT DOES NOT WARRANT THAT OPERATION OF THE PAYMENT PROCESSING SERVICE WILL BE UNINTERRUPTED, ERROR-FREE, OR SECURE. MERCHANT ACKNOWLEDGES THAT THE PAYMENT PROCESSING SYSTEM IS PROVIDED FOR USE BY MERCHANT "AS IS." MERCHANT FURTHER ACKNOWLEDGES THAT TELEDRAFT BEARS NO RESPONSIBILITY FOR THE MERCHANT WEB SITE(S). MERCHANT ACKNOWLEDGES THAT AN AUTHORIZATION FOR PAYMENT IS NEITHER A WARRANTY THAT THE PERSON PRESENTING THE AUTHORIZATION IS THE RIGHTFUL ACCOUNT HOLDER NOR A PROMISE OR GUARANTEE BY TELEDRAFT THAT IT WILL PAY OR ARRANGE FOR PAYMENT TO MERCHANT FOR THE AUTHORIZED TRANSACTION. MERCHANT ACKNOWLEDGES THAT AN AUTHORIZATION DOES NOT PREVENT A SUBSEQUENT CHARGEBACK OF A PREVIOUSLY AUTHORIZED TRANSACTION PURSUANT TO THIS AGREEMENT.

## 13. Limitation of Liability

IN NO EVENT SHALL TELEDRAFT'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT FROM ANY CAUSE, EXCEED THE TOTAL MERCHANT FEES PAID BY MERCHANT TO TELEDRAFT UNDER THIS AGREEMENT FOR THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE DATE ON WHICH THE DISPUTE AND/OR CAUSE OF ACTION AROSE. IN ADDITION, IN NO EVENT SHALL TELEDRAFT, ITS AFFILIATES, OR ANY EACH OF ITS DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS BE RESPONSIBLE OR LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY, PUNITIVE OR OTHER DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF REVENUES OR LOSS OF PROFITS), EVEN IF TELEDRAFT, ITS AFFILIATES, OR ANY OF ITS DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, UNDER ANY CONTRACTUAL, NEGLIGENCE, STRICT LIABILITY OR OTHER THEORY ARISING OUT OF OR RELATING IN ANY WAY TO THE TRANSACTION, SERVICES AND/OR PRODUCTS, OR ANY OTHER SUBJECT MATTER OF THIS AGREEMENT. MERCHANT SHALL NOT BE LIABLE FOR ANY LOSS OR DAMAGE CAUSED BY DELAY IN FURNISHING SERVICES OR PRODUCTS TO MERCHANT OR ITS CUSTOMERS OR ANY OTHER PERFORMANCE UNDER THIS AGREEMENT. It is agreed that in no event will Teledraft be liable for any claim, loss, billing error, damage, or expense caused by Teledraft's performance or failure to perform hereunder that is not reported in writing by Merchant to Teledraft within thirty (30) days of such failure to perform or, in the event of a billing error, within sixty (60) days of the date of the invoice or applicable statement. However, under no circumstances will Teledraft be liable to Merchant for delays in data transmission.

## 14. Indemnity

Merchant agrees to indemnify, defend, and hold Teledraft, and its officers, directors, agents and employees, harmless from and against any liability, claims, demands, costs, loss, damages and/or reasonable attorney's fees incurred or suffered by Teledraft as a result of or arising from Merchant's conduct of its business, any transactions processed under this Agreement, Merchant's breach of any obligations or provisions under this Agreement or Merchant's violation of applicable law, regulation or rule. In the event that Teledraft receives any claim or demand or becomes subject to any suit, proceeding or other action under which a claim or indemnification may be made against Teledraft under this Agreement, Teledraft shall (a) promptly notify Merchant in writing of the claim or legal action; (b) reasonably cooperate with Merchant in the making of any of Merchant's claims or defenses if such cooperation does not conflict with Teledraft's position; and (c) provide information, assist in the resolution of the claim and make available at least one employee or agent who can testify regarding said claims or defenses if such information, and assistance does not conflict with Teledraft's position. Any and all costs for responding to court orders of any type including subpoenas for transactions generated by Merchant or from doing business with Merchant, shall be due and payable to Teledraft upon demand. Such costs, include but are not limited to attorney's fees, administrative costs and costs for employee time relative to such response. The Merchant shall, upon written notice from Teledraft, immediately undertake payment to counsel selected by Teledraft for the defense of any such claim or action. If Merchant wishes to settle any such claim involving Teledraft, Client shall obtain Teledraft's prior written approval of such settlement.

## 15. General Provisions

Teledraft reserves the right to amend at any time and from time to time any term or condition of this Agreement including, without limitation, transaction fees by providing Merchant written notice, and such amendments shall be effective thirty (30) days following said notice. If Teledraft so amends this Agreement, Merchant shall have the right to terminate this Agreement if it provides written notice to Teledraft within said thirty (30) day period. Teledraft may use designees to assist in the performance of Teledraft's obligations hereunder and notwithstanding any other provision of this Agreement, Teledraft may delegate any of its obligations hereunder to such designees. Merchant may no assign or delegate any rights or obligations under this Agreement without Teledraft's prior written approval. Nonperformance by either party will be excused, except Merchant's obligation to pay under this Agreement, to the extent that performance is rendered impossible by any force majeure event and not caused by the gross negligence or willful misconduct of the non-performing party. The relationship of the parties established by this Agreement is that of independent contractors. This Agreement will be governed by and construed under the laws of the State of Arizona without reference to conflict of law principles. The parties agree that jurisdiction shall be in Superior Court of the State of Arizona and that venue shall be in Maricopa County. This Agreement, together with all exhibits and attachments hereto, sets forth the entire agreement and understanding of the parties relating to the subject matter herein (other than agreements relating to confidentiality) and merges all prior discussions between them. Except as otherwise specifically provided in this Agreement, no modification of or amendment to this

Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both parties, and the waiver of any breach or default will not constitute a waiver of any other right hereunder or any subsequent breach or default. If any provision in this Agreement is found invalid by a court of competent jurisdiction, such provision will be construed, if feasible, so as to render the provision enforceable, and if no feasible interpretation would save such provision, it will be severed from the remainder of this Agreement.

16. Notices

Any notice required or permitted to be given by either party under this Agreement will be in writing and will be deemed given: (i) the next business day after pre-paid deposit with a commercial courier service that is contracted to deliver the item the next business day, (ii) upon receipt, if personally delivered, (iii) three (3) days after deposit, postage pre-paid, with first class airmail (certified or registered if available), or (iv) upon receipt, when sent by facsimile to the other party at its address below, or to such new address as may from time to time be supplied hereunder the parties hereto:

Notice Address for Teledraft:

Teledraft, Inc
Attn: Al Slaten
4625 So. Wendler Dr. Suite 204
Tempe, AZ 85282
Phone: 602 454-9575
Fax: 602 454-9576

Notice Address for Merchant:

Dale Cleveland
5301 Laurel Cny. Blvd.
# 132
Valley Village, CA 91607

IN WITNESS WHEREOF, the parties have cause this Agreement to be signed by duly authorized officers or representatives as of the Effective Date, as defined above.

MERCHANT
Signature: /s/ Dale Paul Cleveland
Print Name: DALE PAUL CLEVELAND
Title: CEO
Date: 5/26/2005

TELEDRAFT, INC.
Signature: /s/ Al Slaten
Print Name: Al Slaten
Title: President
Effective Date: 5/26/05

Signature: _____
Print Name: _____
Title: _____
Date: _____

CORPORATE ~~PERSONAL~~ GUARANTEE

In exchange for Teledraft's acceptance of this Agreement, the undersigned, in his/her ~~personal~~ *Corporate officer* capacity unconditionally guarantees performance of the Merchant's obligations under the Agreement, and payment of all sums due thereunder, and in event of default agrees to indemnify Teledraft for any and all amounts due from Merchant under Agreement. I understand that this is a Guarantee of payment and not of collection and that Teledraft, Inc. is relying upon this Guarantee in entering into the Agreement.

/s/ Dale Paul Cleveland
In his/her ~~personal~~ *Corporate* capacity
Print Name: DALE PAUL CLEVELAND
Date: 5/26/2005

~~In his/her personal capacity~~
~~Print Name~~
~~Date~~

Teledraft MSA rev 02/24/2004

5

Initial: [initials]

11

# TELEDRAFT, INC.
## Schedule "A"

List of Rates

| | | |
|---|---|---|
| Application Fee (non-refundable) | $ 250.00 | |
| Phone Set-Up Support* | $ 250.00 | |
| Merchant Discount Rate** | $ 0 or 0 % whichever is greater | |
| Transaction Fee | $ 1.10 | Chargeback Fee: $ 1.25 |
| Monthly Minimum Fee*** | $ 350.00 | |
| Unauthorized Fee | $ 20.00 | |

There will be a 5 % six month rolling reserve on the gross funds accepted into the system. Teledraft Inc. continually reviews all accounts and reserves the right to adjust the reserve amount based on the actual experience of charge backs.

Merchant understands and agrees that by sending the first list of payments to be processed and Teledraft Inc. agrees to process those payments, Merchant accepts the terms and conditions of this Schedule "A" and the corresponding Teledraft Merchant Services Agreement.

Merchant Referred by: Steven Breier

Approved: Dale Paul Cleveland   Date: 5/26/2005

The payout schedule for this account will be 12 business days as long as the transaction volume remains at 1150 per week as agreed.

*If approved will be charged when first settlement funds are sent.

**All rates and fees subject to approval by Teledraft Inc. These rates are based on the average ticket price of $ 160.00

*** If the total amount of Merchant's transaction fees for any month is less than the Monthly Minimum Fee, then the Monthly Minimum Fee will apply for said month.

Teledraft MSA rev 02/24/2004

6

Initial

12

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Carolyn Turchin.

The case number on all documents filed with the Court should read as follows:

## CV08- 3153 R (CTx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

MICHAEL L. MALLOW (SBN 188874)
PATRICK DOWNES (SBN 186461)
LOEB & LOEB LLP
10100 Santa Monica Boulevard Suite 2200
Los Angeles, California 90067

Attorneys for Plaintiff, EDEBITPAY, L.L.C.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEBITPAY, L.L.C., a Nevada corporation<br>PLAINTIFF(S)<br><br>V.<br><br>TELEDRAFT, INC., a Delaware corporation<br>DEFENDANT(S). | CASE NUMBER<br>**CV08-03153** R (CTx)<br><br>**SUMMONS** |

TO: DEFENDANT(S): <u>TELEDRAFT, INC.</u>

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Loeb & Loeb LLP, Michael l. Mallow</u>, whose address is <u>10100 Santa Monica Boulevard, Suite 2200, Los Angeles, California 90067</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  MAY 13 2008         By: **NATALIE LONGORIA**
                                 Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

1198

CV-01A (12/07)                    SUMMONS

American LegalNet, Inc.
www.USCourtForms.com

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
EDEBITPAY, L.L.C., a Nevada corporation

**DEFENDANTS**
TELEDRAFT, INC., a Delaware corporation

**(b) County of Residence of First Listed Plaintiff** (Except in U.S. Plaintiff Cases):
Los Angeles County

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
Maricopa County, Arizona

**(c) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
MICHAEL L. MALLOW (SBN 18874)   (310) 282-2000
PATRICK DOWNES (SBN 186461)
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:** JURY DEMAND: ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)
CLASS ACTION under F.R.C.P. 23: ☐ Yes  ☒ No          ☒ MONEY DEMANDED IN COMPLAINT: $ 1,173,842.60

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC Section 1332; Breach of cotract, covenant of good faith and conversion

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES:
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

CONTRACT:
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

REAL PROPERTY:
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

TORTS PERSONAL INJURY:
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

TORTS PERSONAL PROPERTY:
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

BANKRUPTCY:
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

CIVIL RIGHTS:
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities – Employment
- ☐ 446 American with Disabilities – Other
- ☐ 440 Other Civil Rights

PRISONER PETITIONS:
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

FORFEITURE/PENALTY:
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

LABOR:
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS:
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

SOCIAL SECURITY:
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI(405(g))

FEDERAL TAX SUITS:
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed?  ☒ No  ☐ Yes
If yes, list case number(s):

FOR OFFICE USE ONLY:  Case Number: **CV08-03153**

V-71 (07/05)                                    CIVIL COVER SHEET                           American LegalNet, Inc.   Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

VIII(b). RELATED CASES: Have any cases been previously filed that are related to the present case? ☒ No  ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
Los Angeles County

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
Arizona

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
Los Angeles County

SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_   Date 5/13/08

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |